IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TYLER BRAXTON DENBY,

               Plaintiff,

     vs.

SCOTTS BLUFF COUNTY
DETENTION CENTER, and
BLANCO, Sgt.;

             Defendants.

**8:24CV221**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Tyler Braxton Denby's Complaint filed on June 14, 2024. Filing No. 1. Plaintiff is currently incarcerated. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).

## I. SUMMARY OF COMPLAINT

Plaintiff sued the Scotts Bluff County Detention Center (SBCDC) and one of its sergeants, Blanco. Filing No. 1 at 1-2. Plaintiff's complaint consists primarily of a collection of notes chronicling his stay at SBCDC, and it is difficult to summarize. Very liberally construed, Plaintiff is alleging he was required to pay for property damage he did not cause, and he was exposed to conditions of confinement that violated his constitutional rights, including harsh disciplinary confinement; insufficient COVID-19 precautions; insufficient medical surveillance; limited ability to practice his religion; and limited access to the law library. Filing No. 1 at 4-5.

On July 30, 2021, Plaintiff was arrested in Alliance, Nebraska. *U.S. v. Denby*, 4:22-cr-03027-SMB-JMD (D. Neb.), Filing No. 50 at 2. By August 8,

2021, he was incarcerated in the SBCDC, and he remained there through October 2021. Filing No. 1 at 4, 12. For all times relevant to the claims raised, Plaintiff was a pretrial detainee.

Upon arrival at SBCDC, Plaintiff was placed in quarantine for 14 days due to the COVID-19 pandemic. Filing No. 1 at 21. His clothing allocation was limited to the shirt, pants, and boxers he was wearing. Filing No. 1 at 13. The water to Plaintiff's cell was shut off for two to three days. Filing No. 1 at 15. Plaintiff wedged the eraser end of a pencil into his door lock, and the eraser became lodged in the lock. He also used a sheet to create a tiny ball of thread, tied it to another string, and pulled it across the floor to mimic a mouse and scare the guards. Filing No. 1 at 13. Plaintiff was placed in disciplinary confinement from August 12 through September 1, 2021.

During his time in disciplinary confinement, Plaintiff was allowed out of his cell only one hour a day to shower and make phone calls, although he alleges there were multiple times when he was not let out for his hour. Since he had a history of escape,[1] Plaintiff's assigned hour was between 11:00 p.m. and 3:30 a.m., when all other inmates were in their cells. Filing No. 14.

When Plaintiff was kicking, punching, and head-butting the door loudly, a guard threatened to tie him in a chair for his own safety. Filing No. 1 at 19. On or about August 12, 2021, the toilet in Plaintiff's cell did not flush properly, so in anger, he kept flushing it until the floor was flooded. In response, Plaintiff was placed in a cell for six hours with no sink or toilet, and only a mat for laying down. He was ignored and had to urinate into a floor drain. Filing No. 1 at 13, 15, 19. Plaintiff asked for writing paper, but was told it was unavailable. Filing No. 1 at 15. Plaintiff was threatened by other inmates in

---

[1] See *U.S. v. Denby*, 4:22-cr-03027-SMB-JMD (D. Neb.), Filing No. 42-4 at 3; Filing No. 50 at 16.

front of guards, but rather than defend Plaintiff, the guards told him to shut his mouth. Filing No. 1 at 15.

As of September 4, 2021, Plaintiff had not personally met with his state-appointed counsel while at SBCDC due to being placed in lockdown. Filing No. 1 at 26.

On September 14 at 9:20 p.m., Plaintiff asked to use a cordless telephone. He was told he could not use the cordless phone and needed to use the corded phone near the kiosk instead. Plaintiff then became angry, yanked on the phone cord, and smacked the kiosk screen with the handset/receiver. Filing No. 1 at 17. The following day, Plaintiff saw an inmate and guard attempting to repair the phone by reattaching some wires. Filing No. 1 at 16.

On September 15, 2021, Plaintiff began a hunger strike. When food trays were brought to his cell, he ate only the contents of any packets of Kool-Aid, salt, pepper, sugar, or butter on the tray. He drank only enough water to stay alive and keep his kidneys functioning, and he refused to take his blood pressure medication. Filing No. 1 at 15, 19, 23-24. Plaintiff wondered why no one at SBCDC was encouraging him to eat. Filing No. 1 at 15.

A hearing regarding Plaintiff's conduct with the telephone was held on September 16, 2021. Although Plaintiff claims he did not break anything, SBCDC concluded Plaintiff used the handset of the corded phone to hit the kiosk screen and then pulled the cord out. Plaintiff was ordered to pay $125 for phone repairs, and he was placed in lockdown for 30 days with no access to the commissary. Filing No. 1 at 16-17, 20.

On September 19, 2021, a telephone repairman came to SBCDC. He did not need to replace the telephone receiver, but he did have to correctly reconnect the wires to make it work. Filing No. 1 at 18.

3

By September 27, 2021, Plaintiff had not eaten for 12 days. Filing No. 1 at 23. When a food tray was delivered that day, he reached to grab the Kool-Aid, salt, and pepper packets and fainted, striking the toilet in his cell as he fell. The guard quickly alerted the nurse who promptly arrived, physically examined Plaintiff, and checked his blood pressure and blood sugar. His blood sugar level was normal, and his blood pressure was 130's/88 [sic]. Filing No. 1 at 23. The nurse refused to check Plaintiff's vital signs on September 28, 2021. Plaintiff believed the SBCDC staff did not care about his health. Filing No. 1 at 26. Plaintiff had refused TB testing and shots, but never checkups. Filing No. 1 at 23. Plaintiff was not offered his medication on September 29 and 30, 2021. He states he would have refused the medication, and the nurse likely knew that, but it should have been offered anyway. Filing No. 1 at 31.

To limit the spread of COVID-19, SBCDC implemented a rotating schedule that limited the number of inmates released from their cells at a time. Plaintiff was assigned the 7-8 a.m. time slot, but he refused it because he wanted an evening time so he could shower after working during the day. Filing No. 1 at 22.

In mid-September, Plaintiff heard Blanco say he had tested positive for COVID-19. After making that statement, Blanco remained at the facility and interacted with inmates. Filing No. 1 at 31. Plaintiff claims SBCDC failed to clean surfaces, use hand sanitizers, use personal protective equipment, keep dirty laundry from individual rooms separate, or adequately separate/distance inmates. Filing No. 1 at 4-5, 19-21, 24-25, 27-28. Plaintiff alleges that while he was incarcerated at SBCDC, the inmates in the L-Pod became infected with COVID-19, and many COVID-19 patients were assigned to the Medical Unit. Filing No. 1 at 24-25. Plaintiff states he thinks he became infected with

COVID-19, but he does not allege that he was diagnosed with COVID-19. Filing No. 1 at 5.

Plaintiff refused shots at the jail, so he was unable to participate in religious services and Bible study groups. Filing No. 1 at 19. He was not allowed access to his Bible for one or two days. Filing No. 1 at 15.

Plaintiff was afforded limited access to the law library or law books. Filing No. 1 at 19, 21. He asked for a copy of the SBCDC handbook. He was not given a copy, but he was told that three copies were available for review at the kiosk. Filing No. 1 at 19.

Blanco allegedly assaulted Plaintiff between 8:00 and 9:00 a.m. on October 1, 2021. Filing No. 1 at 31.

Plaintiff requests an award of damages for violation of his constitutional rights.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the

line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

Plaintiff seeks recovery under 42 U.S.C. § 1983. To recover under 42 U.S.C. § 1983, Plaintiff must show "the conduct complained of was committed by a person acting under color of state law," and this conduct deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

While housed in the SBCDC, Plaintiff was a pretrial detainee. So, his "§ 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment." *Johnson v. Schurman*, --- F.4th ---, No. 24-2002, 2025 WL 2112860, at *3 (8th Cir. July 29, 2025) (quoting *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011)). But as a practical matter, the distinction makes little

6

difference. "Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.* (quoting *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007)). However, the Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

As discussed below, upon review of Plaintiff's allegations, Plaintiff will be granted leave to file an amended complaint on his assault claim against Blanco. All other claims will be dismissed for failure to state a claim.[2]

### A. Claim against Scotts Bluff County

Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Counties may sue and be sued under Nebraska law. Neb. Rev. Stat. § 23–101. But there is no statutory or other authority under Nebraska law stating that county corrections departments may sue or be sued. SBCDC is a "unit of local government," in this case, a unit of Scotts Bluff County. Neb. Rev. Stat. § 13–903. So, the claims against SBCDC are claims against Scotts Bluff County.

A lawsuit against county employees, in their official capacities, is a lawsuit against the county. *See, e.g., Eichelberger v. Yardley*, 2025 WL

---

[2] Under the Prison Litigation Reform Act (PLRA), inmates must fully and properly exhaust their administrative remedies for each claim in the complaint and complete that process before filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). The Court notes that based on Plaintiff's statements within his complaint, he did not exhaust administrative remedies before filing this lawsuit, explaining he was not aware of the grievance process while in SBCDC. The Court will not address, *sua sponte*, whether Plaintiff's alleged ignorance excuses compliance with the PLRA exhaustion requirement. Courts have held that "[s]ince the availability of administrative remedies for an inmate's particular grievance is typically not clear from the face of a complaint, the better practice in a given case may be to afford notice and an opportunity to respond before dismissal when exhaustion is the basis for that action." *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003) (quoting *Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001)).

1898088, at *5 (D. Neb. July 9, 2025) (county attorneys and sheriff); *Parsons v. McCann*, 138 F. Supp. 3d 1086 (D. Neb. 2015) (county attorney's offices and police department); *Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (sheriff's and county attorney's offices); *Holmstedt v. York County Jail Supervisor (Name Unknown)*, 739 N.W.2d 449, 461 (Neb. Ct. App. 2007) (county sheriff's department), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008). So, Plaintiff's claims against Blanco, in his official capacity, are claims against Scotts Bluff County.

To state a claim for § 1983 recovery from a governmental entity—in this case, Scotts Bluff County—a plaintiff must identify a governmental policy or custom that caused the plaintiff's alleged injury. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). And even if an unconstitutional policy or custom is alleged, the county cannot be held liable absent a threshold finding of individual liability on the underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Plaintiff has not alleged the existence of any Scotts Bluff County policy or custom that caused Plaintiff's alleged injuries.

Plaintiff's claims against Scotts Bluff County, identified herein as the Scotts Bluff County Detention Center, and against Blanco in his official capacity, must be dismissed for failure to state a claim.

## B. Individual Capacity Claims

Plaintiff's complaint states he is suing Blanco in only his official capacity. However, the Court will also address whether Plaintiff has or could state a claim against Blanco in his individual capacity. Plaintiff's complaint raised allegations against Blanco specifically only three times:

1) Plaintiff states Blanco disclosed his name to Plaintiff, and then made a profane comment and told Plaintiff to go write it in his book, Filing No. 1 at 26;

2) Plaintiff overheard Blanco state he (Blanco) tested positive for COVID-19, and then Blanco continued to have contact with detainees while working at SBCDC, Filing No. 1 at 31; and

3) Blanco assaulted him on October 1, 2021, Filing No. 1 at 31.

All other allegations are directed at the SBCDC employees in general.

Blanco was a Sergeant at SBCDC. Very liberally construed, Plaintiff may be alleging Blanco, in his supervisory role, is responsible for all the alleged misconduct of correctional officers under his supervision. However, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, a plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Supervisors can incur liability only for their personal involvement in a constitutional violation, or when their collective inaction amounts to deliberate indifference to or tacit authorization of violative practices. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). Plaintiff's complaint contains no allegations of such conduct by Blanco.

Even had Plaintiff adequately alleged a basis for supervisor liability, except for one allegation, Plaintiff's allegations fail to state a claim for relief.

## 1. Conditions of Disciplinary Segregation

Plaintiff claims the conditions of his confinement violated his constitutional rights. The Eighth Circuit has determined that a conditions-of-

confinement claim brought by a pretrial detainee should be analyzed using an objective "punishment" standard, rather than a subjective "deliberate indifference" standard. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020). This is because the Supreme Court has held that the government may detain persons pending trial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

> The Court [in *Bell*] articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. If conditions are found to be arbitrary or excessive, it is permissible to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Stearns*, 957 F.3d at 907 (internal quotation marks and citations omitted).

Plaintiff alleges that when he was initially placed in disciplinary confinement, he was confined to his cell—with a sink, toilet, and bed—for twenty-three hours a day. Due to his prior escape from custody, his hour of release time occurred after 11 p.m., when all other inmates were in bed. He could not attend religious services and Bible studies, and he had limited access to his court-appointed attorney and law books. These conditions of confinement, considered individually or in the totality, were reasonably related to maintaining safety and security within SBCDC and did not violate Plaintiff's due process rights. *See Artisani v. Iowa*, No. 23-2984, 2024 WL 227974, at *1 (8th Cir. 2024) (holding segregation of detainee, with denial of commissary privileges, and the right to attend classes and religious services

10

did not violate the Due Process Clause); *Spann v. Lombardi*, 65 F.4th 987, 991 (8th Cir. 2023) (holding confinement to a cell for up to twenty-three hours a day with limited human interaction and the inability to attend religious services was not unconstitutional).

Plaintiff's conditions of confinement were restricted after he intentionally flooded his cell by repeatedly flushing the toilet. His bed was replaced with a mat for sleeping, and his cell did not have a toilet or sink. But these additional limitations were a reasonable attempt to obtain and maintain order within the facility. *Raper v. Gober*, No. 23-1331, 2023 WL 4174078, at *1 (8th Cir. June 26, 2023) (finding no constitutional violation where the facility turned off the water to the toilet in detainee's cell); *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996) (holding the use of a floor mattress for 13 nights was not "punishment"); *Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996) (holding denial of clothing, bedding, running water, food and toiletries while in solitary confinement did not violate the Due Process Clause); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (holding a pretrial detainee with no mattress; no running water; and limited hygiene supplies and clothing was not denied the "minimal civilized measure of life's necessities" in violation of the Eighth Amendment). Where, as in this case, a detainee does not allege he was unable to urinate or defecate when needed, being housed in segregation with no flush toilet and sink does not violate the constitution. *See Seltzer-Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992).

Plaintiff's writings frequently mention the time he had to urinate in a floor drain. But this allegation appears to address the 6-hour segregation imposed after Plaintiff purposefully flooded his cell. This additional restriction—particularly for the short timeframe it lasted—did not violate

Plaintiff's constitutional rights. See *Smith,* 87 F.3d at 268 (holding exposure to raw sewage for four days was not unconstitutional).

### 2. Lack of COVID-19 Precautions—Failure to Protect

Plaintiff alleges the employees of SBCDC did not adequately implement measures to limit his risk of exposure to COVID-19. To state a claim of failure to protect from harm in violation of the Eighth or Fourteenth Amendment, Plaintiff must allege facts showing that 1) the conditions of his confinement created a substantial risk of serious harm, and 2) the defendant was deliberately indifferent to Plaintiff's health or safety. *Williams*, 49 F.3d at 445 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Courts have uniformly held that allegations of failing to adequately adopt and enforce COVID-19 precautions may suggest negligence, but mere negligence is not a basis for liability under 42 U.S.C. § 1983. *Luna v. Gentry*, No. 22-cv-4098, 2023 WL 6367696, at *7 (W.D. Ark. Sept. 29, 2023) (collecting cases). The "prison staff's inconsistent wearing of face masks does not reach the level of deliberate indifference needed to plead a constitutional claim." *Byrd v. Munoz*, No. 21-cv-1152, 2024 WL 1715407, at *3 (C.D. Ill. Mar. 26, 2024) (collecting cases). And the mere fact that COVID-19 was spread throughout a prison facility does not establish deliberate indifference. *McPeek v. Wasko*, No. 23-cv-4025, 2025 WL 834351, at *6 (D.S.D. Mar. 17, 2025) (collecting cases).

Moreover, to proceed with his § 1983 claim, Plaintiff must allege facts supporting a finding that the defendant's alleged conduct caused harm to the plaintiff. *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021). Here, Plaintiff does not allege that he became infected with COVID-19 due to exposure to the virus at SBCDC. He assumes he was exposed to the disease and says he thinks had it, Filing No. 1 at 5, but other than this conclusory

statement, he does not allege suffering any personal consequences from COVID-19 exposure. This lack of causation defeats his § 1983 claim for lack of COVID-19 precautions. *Cannon v. Bowers*, No. 21-cv-37, 2023 WL 3859978, at *4 (E.D. Ark. May 5, 2023). Plaintiff claims he did not eat, and lost significant weight because he was afraid his food was contaminated by the virus, but the consequences of Plaintiff's subjective fear of contracting a communicable disease is not a valid basis for imposing liability under § 1983. *Wade v. Lee Cnty., Miss.*, No. 21-cv-98, 2023 WL 3276435, at *5 (N.D. Miss. May 5, 2023) (holding that the fear of contracting COVID-19 was insufficient to state a claim that the prison's inadequate COVID-19 precautions violated the plaintiff's constitutional right to protection).

Plaintiff does allege that he overheard Blanco tell another SBCDC employee that he (Blanco) tested positive for COVID-19, and after saying that, Blanco remained on the job. Even assuming this statement is true, there is nothing in Blanco's reported statement indicating when he tested positive for COVID-19 or that he was infectious on the day Plaintiff heard him. More importantly, Plaintiff has not alleged a causal link between Blanco's COVID-19 infection and Plaintiff's own health. Plaintiff alleges Blanco exposed others to COVID-19, but Plaintiff cannot assert claims for anyone other than himself.

Plaintiff's claim for § 1983 recovery arising from the alleged lack of COVID-19 precautions must be dismissed.

### 3. Lack of Medical Care and Surveillance

In Plaintiff's diary of events, he mentions the failure to take his vital signs (presumably pulse and blood pressure) on demand and the failure to offer him his prescribed medication despite his intent to refuse it.

"When a pretrial detainee's Fourteenth Amendment claim alleges constitutionally deficient medical care, the Eighth Amendment deliberate-

13

indifference standard applies." *Smith v. Eberhardt*, No. 8:23-cv-156, 2025 WL 2202722, at \*5 (D. Neb. July 30, 2025) (citing *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014)). The detainee must allege (1) he had an objectively serious medical need and (2) the defendants knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006).

As it pertains to the medical care at issue, Plaintiff has not alleged either element of a constitutional claim for lack of medical care. He has not alleged the existence of any serious illness or disease supporting a need for on demand vital signs or even his blood pressure medication, and he has not alleged that the care he did receive failed to meet his needs. The Court notes that Plaintiff chose not to take his blood pressure medication, but even after 12 days of refusing to take it, his blood pressure was only slightly elevated, if at all. Finally, Plaintiff cannot plausibly claim the nurse provided inadequate medical care by failing to offer him medication he would not have taken.

Any claims Plaintiff is asserting for constitutionally deficient medical care must be dismissed.

### 4. Lack of Access to Religious Services and Bible Studies

Plaintiff alleges he was unwilling to be tested for TB or receive shots, and he was not allowed to participate in religious services or Bible studies. Filing No. 1 at 19. Plaintiff has not explained what shots he refused. As to TB testing, TB is a serious disease harmful to the lungs and other organs, and prisons are high risk environments for spreading a tuberculosis infection. *Butler v. Fletcher*, 465 F.3d 340, 342 (8th Cir. 2006). Restricting the movements of detainees who refuse TB testing is a reasonable penological measure that

serves to protect the facility's population as a whole. *Id.*; *see also Farnsworth v. Northam*, No. 21-cv-463, 2024 WL 989491, at *6 (W.D. Va. Mar 5, 2024) (holding that cancelling prison worship services during the COVID-19 pandemic was not unconstitutional).

For the last three weeks of August, and for a month beginning on September 15, 2021, Plaintiff was in disciplinary segregation at SBCDC. "Limitations on religious services, especially for a short period of time, have also been found not to present an atypical and significant hardship." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). For all but two days, Plaintiff possessed his Bible. Since he was not prevented from exercising his religion within his cell, his inability to attend group worship during his disciplinary segregation was not an atypical and significant hardship that violated his due process rights. *Id.*

### 5. Lack of Access to the Courts

Plaintiff alleges he asked for law books, but those requests were not immediately granted.

During the time Plaintiff was detained in SBCDC, he was represented by counsel for his ongoing state criminal charges. The lack of access to a law library or law books does not deny a pretrial detainee access to courts if he has an attorney. *Turner v. Long*, No. 24-cv-492, 2025 WL 1267308, at *6 (D. Neb. May 1, 2025) (citing *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).

### 6. Hostile Treatment by Blanco

Plaintiff claims that Blanco told Plaintiff his name, swore at him in anger, and told Plaintiff to go write the name in his little book. Filing No. 1 at 26. "Verbal threats and name calling usually are not actionable under § 1983," *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985)), and in this case, Blanco's statements

15

did not rise even to that level. They certainly did not intimidate Plaintiff. He did, in fact, jot down the incident in his written chronology of events. And as that chronology reflects, Blanco's statement did not prevent Plaintiff's continued complaints about, and his defiant responses to, the conditions of his confinement.

Plaintiff also claims Blanco assaulted him on October 1, 2021. This allegation could raise a claim of unconstitutional use of excessive force. But Plaintiff does not describe the circumstances—the what, where, and how—of this incident, and he fails to explain any injury to him as a result of this alleged assault. Without these factual allegations, Plaintiff has failed to state an excessive force claim. But rather than dismissing the claim at this time, Plaintiff will be granted leave to file an amended complaint as to that incident only.

## IV. OTHER PENDING MOTIONS

On May 19 and July 14, 2025, Plaintiff filed correspondence requesting the appointment of counsel and the status of this case, which the Court construes as motions. Filing Nos. 10 & 11. To the extent Plaintiff seeks the status of his case, the motions are granted and this Memorandum and Order serves to advise Plaintiff of the status of this matter.

With regards to Plaintiff's request for court-appointed counsel, "[t]here is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and

16

to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Plaintiff appears able to adequately present his claims. The Court is, however, aware that this situation may change as litigation progresses. As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## V. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Plaintiff's claims against SBCDC, and against Sergeant Blanco in his official capacity, must be dismissed for failure to state a claim. Except for the allegation of assault, any claims against Sergeant Blanco in his individual capacity must likewise be dismissed. But as to the assault allegation, Plaintiff will be granted leave to file an amended complaint.

Accordingly,

IT IS ORDERED

1. Plaintiff's claims against the Scotts Bluff County Detention Center and against Sergeant Blanco in his official capacity are dismissed.

2. The Clerk of Court is directed to terminate "Scotts Bluff County Detention Center" and Sergeant Blanco, in his official capacity, as defendants in this case. The Clerk of Court is further directed to update the caption to reflect that "Sergeant Blanco, in his individual capacity," is the sole defendant.

3. Except for the potential claim against Blanco, in his individual capacity, for use of excessive force on October 1, 2021, Plaintiff's claims against Blanco in his individual capacity are dismissed for failure to state a claim.

4. Plaintiff shall have until **September 25, 2025**, to file an amended complaint that sufficiently states his constitutional claim against Defendant Blanco in his individual capacity for use of excessive force on October 1, 2021. In his amended complaint, Plaintiff must state facts supporting his claim, including what Blanco did to him, when he did it, how he did it, and how Blanco's actions harmed him. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

5. The Court reserves the right to conduct further review of Plaintiff's claim pursuant to 28 U.S.C. §§ 1915(e)and 1915A in the event he files an amended complaint.

6. Plaintiff's motions, Filing No. 10; Filing No. 11, are granted in part, and denied in part, as follows:

> a. Plaintiff's request for the appointment of counsel is denied without prejudice to reassertion.
>
> b. Plaintiff's request for a status report is granted consistent with this Memorandum and Order.

7. The Clerk of the Court is directed to send to Plaintiff the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

8. The Clerk of Court is directed to set a pro se case management deadline using the following text: **September 25, 2025**: check for amended complaint.

9. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 26th day of August, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge